IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENDA CHARCALLA, individually and as personal representative of the Estate of Gary Charcalla and as guardian of her minor sons, Brock Charcalla and Dalton Charcalla, | ) ) ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | C.A. No. 13-204 Erie Chief District Judge Conti |
| The Goodyear Tire & Rubber Company, | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION**

**Conti, Chief District Judge**

**I.   Introduction**

Pending before the court is the motion for sanctions filed by defendant The Goodyear Tire & Rubber Company ("Goodyear"). (ECF No. 103.) In the underlying action, plaintiff Brenda Charcalla, individually and as personal representative of the Estate of Gary Charcalla and as guardian of her minor sons, Brock and Dalton Charcalla ("Charcalla" or "plaintiff"), alleges that a defectively manufactured Goodyear tire on her husband's truck experienced a tread separation at highway speeds, leading to a fatal accident. Goodyear contends, *inter alia*, that an alternative explanation for the accident might have been the failure of a product called a steer damper (or steer dampener) that had been attached to the axle of the truck. At issue in the instant motion is whether the disappearance of the steer damper from the storage lot in which the truck had been secured warrants a spoliation sanction.

Goodyear originally raised this issue in a motion for summary judgment. (ECF No. 76.) At a telephonic status conference held on September 20, 2016, this court noted that the issue would be more appropriately framed as a motion for sanctions. (ECF No. 105.) Goodyear responded by filing the instant motion.

On October 26, 2016, Charcalla filed a motion seeking limited discovery for the purpose of responding to Goodyear's spoliation motion. (ECF No. 107.) This court granted Charcalla's request. (ECF No. 110.) Following the discovery period, Charcalla responded to Goodyear's motion (ECF No. 113) and Goodyear filed a reply. (ECF No. 116.) This matter is now ripe for disposition.

**II. Factual Background**

On July 15, 2011, plaintiff's husband, Gary Charcalla, was operating a 2000 Freightliner FL60 truck when the front left tire on the truck allegedly sustained a tread separation. (Combined Concise Statement of Material Facts ("C.S.M.F.") (ECF No. 96) ¶¶ 1-3.) Plaintiff alleges that this tread separation caused the vehicle to lose control and exit the highway, striking several trees before landing on its side. (Id. ¶ 6.) Gary Charcalla was killed in the accident and several other passengers sustained injuries. (Id. ¶¶ 7-8.)

The subject tire was a Goodyear G647 all-steel commercial truck tire manufactured in 2003. (Id. ¶ 3.) Following the accident, plaintiff's insurance company, Progressive Insurance ("Progressive"), ordered that the truck be towed to a salvage yard facility in Virginia for inspection and storage. (Id. ¶ 9; Affidavit of Ryan Clute ("Clute Aff.") (ECF No. 94-8) ¶¶ 6-7.) Photographs taken by Progressive immediately following the accident reveal that the front axle of the truck was fitted with a steer damper, an aftermarket stabilizer designed to prevent the driver of a vehicle from losing control during a tire malfunction of the kind alleged in this case.

(ECF No. 103-2.) Goodyear submitted an expert report opining that the steer damper on the Charcallas' truck may have malfunctioned, making it difficult or impossible for the driver to maintain control of the vehicle. (ECF No. 96 ¶ 11; Deposition of Robert Nocivelli ("Nocivelli Depo.") (ECF No. 85-13) at 84; Expert Report of Robert Nocivelli ("Nocivelli Report") (ECF No. 85-14) at 7.) This kind of malfunction might provide an alternative explanation for the accident and a potential defense to plaintiff's allegations that the tire was defective. (Motion for Sanctions (ECF No. 103) at 2-4.). Unfortunately, the front axle of the vehicle, along with the steer damper, went missing before Goodyear could perform any testing.

Records from the salvage yard provide a general timeline about the movement of the vehicle following the accident. On July 19, 2011, the accident claim was assigned to Progressive agent Ryan Clute ("Clute"). (Clute Aff. (ECF No. 94-8) ¶ 4.) Pursuant to Clute's instructions, the truck was delivered to a storage facility operated by Salvage Direct[1] on or about July 25, 2011. (Id. ¶¶ 6-7.) On August 9, 2011, Clute orally requested that the evidence be placed "on legal hold," meaning that the evidence "was not to be disturbed or destroyed or sold." (Id. ¶ 8.) Progressive followed up with a written "Legal Hold Request" on August 11, 2011. (Id. ¶ 9.) On August 17, 2011, a "hold sticker" was placed on the truck. (Salvage Direct Records (ECF No. 114-2) at 22; Hold Sticker (ECF No. 114-4) at 17.)

On October 11, 2011, Goodyear's local counsel visited the salvage yard and photographed the vehicle, including the front axle assembly. (ECF No. 114-4 at 9-15.) These are the last known photographs of the missing parts. (Affidavit of Brian Ellis ("Ellis Aff.") (ECF No. 91) at 7.)

---

[1] At some point during the next two years, control of the salvage yard transferred from Salvage Direct to another entity, QCSA. (Clute Aff. (ECF No. 94-8) ¶ 10).

On May 2, 2013, plaintiff's counsel emailed Clute and requested that the "right front tire and axle" continue to be preserved. (Clute Aff. (ECF No. 94-8) ¶ 10.) Clute, after consulting with QCSA, discovered for the first time that the front axle assembly was missing and reported this fact to plaintiff's counsel. (Id. ¶¶ 11-12.)

Plaintiff initiated the instant action on July 9, 2013. (ECF No. 1.) Plaintiff's Rule 26(a)(1) disclosure statement, served on November 7, 2013, failed to mention the missing axle assembly. (ECF No. 116-2.) On February 6, 2014, plaintiff's counsel emailed Clute to inquire about whether the missing evidence had been located. (Clute Aff. (ECF No. 94-8) ¶ 13.) Clute made a follow-up inquiry on April 1, 2014, but could not locate the missing parts. (Id. at ¶¶ 11-14.) On April 11, 2014, another Progressive agent visited the salvage yard and failed to locate the front axle assembly. (Id. ¶ 15.) On December 19, 2014, Goodyear's counsel performed an inspection of the vehicle and learned, for the first time, that the front axle assembly and steer damper were missing. (ECF No. 116-1.)

In December 2014, plaintiff engaged a private investigator, Brian Ellis, to attempt to locate the missing evidence. (Ellis Aff. (ECF No. 91) at 3.) In January 2016, Progressive retained its own private investigator, Kenneth Osborne, to perform a similar search. (ECF No. 116-1.) Neither investigator was able to locate the missing parts.

After being granted supplemental discovery, plaintiff deposed several employees of Salvage Direct and QCSA. Ron McKee, a former employee at the Salvage Direct yard in Virginia, recalled that Progressive had moved a lot of their inventory to another facility at some point in 2013. (Deposition of Ron McKee ("R.McKee Depo.") (ECF No. 114-6) at 14-15.) Kari McKee, another Salvage Direct employee, corroborated that Progressive had withdrawn a large amount of inventory sometime in 2013. (Deposition of Kari McKee ("K. McKee Depo.") (ECF

No. 114-5) at 48.) An entry from Progressive's claim notes suggests that the vehicle may have been moved from one side of the salvage yard to another at some point. (Deposition of Ryan Clute ("Clute Depo.") (ECF No. 114-3) at 76-79.) While this suggests the general possibility that the front axle and steer damper may have been misplaced in the course of moving the truck to another storage facility (or from one side of the Virginia facility to the other), none of the deponents could provide a concrete explanation for how the front axle assembly and steer damper disappeared between October 2011 and May 2013.

### III. Standard

Spoliation of evidence is "the failure to preserve or the significant alteration of evidence for pending and future litigation." Parr v. Ford Motor Co., 109 A.2d 682, 701-02 (Pa. Super. Ct. 2014) (citing Pyeritz v. Commonwealth, 32 A.2d 687, 692 (Pa. 2011)). Spoliation occurs where "the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012). With respect to actual suppression of evidence, the Third Circuit Court of Appeals has clarified that a court must determine that the relevant actor suppressed or withheld the evidence in bad faith. Id. at 79. A finding of bad faith is therefore "pivotal" to a spoliation determination. Id. The party seeking a spoliation sanction bears the burden of proving each of these factors. Universal Underwriters Inc. Co. v. Dedicated Logistics, Inc., No. 11-1153, 2014 WL 7335668, at *4 (W.D. Pa. Dec. 19, 2014).

### IV. Analysis

There is no dispute with respect to the first, second and fourth elements of the spoliation analysis. The record reflects that the front axle assembly and steer damper were within the

5

control of plaintiff or her insurance company, Progressive; the missing parts were potentially relevant to Goodyear's defenses in this action; and the duty to preserve that evidence was reasonably foreseeable to plaintiff. Thus, the present inquiry hinges on whether the missing evidence disappeared under circumstances that demonstrate an "actual suppression or withholding of evidence." Bull, 665 F.3d at 73.

In Bull, the Third Circuit Court of Appeals discussed the "key issue" of bad faith in the context of spoliation. Id. at 76-77. The court observed:

> For the [spoliation] rule to apply . . . it must appear that there has been an actual suppression or withholding of the evidence. *No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.* See generally 31A C.J.S. [Evidence] § 156(2); 29 [AM. JUR.2d Evidence] § 177 ("Such a presumption or inference arises, however, only when the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth, and it does not arise where the destruction was a matter of routine with no fraudulent intent.").
>
> Brewer, 72 F.3d at 334 (emphasis added). **Therefore, a finding of bad faith is pivotal to a spoliation determination.** This only makes sense, since spoliation of documents that are merely withheld, but not destroyed, requires evidence that the documents are actually withheld, rather than – for instance – misplaced. Withholding requires intent.

Bull, 665 F.3d at 79 (quoting Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995)) (italicized emphasis in original, bold emphasis added). Consistent with this principle, district courts within the Third Circuit have routinely distinguished between situations where "the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth," and those where "the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." Brewer, 72 F.3d at 334.

6

The former scenario was presented in Baliotis v. McNeil, 870 F.Supp. 1285 (M.D. Pa. 1994), a case heavily relied upon by Goodyear. In Baliotis, a rental property insured by Liberty Mutual Insurance Company ("Liberty Mutual") sustained extensive damage during a fire. Id. at 1286. Liberty Mutual's claims adjuster and a forensic electrical engineer each concluded that the fire was caused by a defective microwave oven. Id. at 1287. An independent investigation performed by a state fire marshal opined that the precise source of the fire was unclear and that the fire could have been caused by any number of electrical sources. Id. Liberty Mutual retained the allegedly defective microwave oven in anticipation of litigation, but authorized the demolition of the rest of the property before the manufacturer of the microwave could perform its own investigation. Id. at 1288. The microwave manufacturer, WCI, sought a spoliation sanction, arguing that the destruction of the property prevented its own investigators from exploring whether an alternate cause of the fire could be identified. Id. at 1286. The court agreed:

> [T]he McNeils and [Liberty Mutual] were in control of the fire scene. At the time the fire scene was demolished, Liberty Mutual had identified WCI as a potential subrogation target . . . Liberty cannot refute the assertion that demolition of the fire scene resulted in destruction of otherwise relevant evidence. . . . Since Liberty Mutual authorized the destruction of indisputably relevant evidence, it and its insureds, the McNeils, are subject to sanctions.

Baliotis, 870 F.Supp. at 1290-91. Critical to the court's decision was the fact that Liberty Mutual had intentionally authorized the destruction of the missing evidence. Id. at 1291; see Bozic v. City of Washington, 912 F.Supp.2d 257, 270 (W.D. Pa. 2012) (finding spoliation sanctions warranted where the party's conduct "rises well above inadvertence, negligence, inexplicable foolishness, or part of the normal activities of business or daily living").

In contrast, courts have rejected spoliation claims where the disappearance of the relevant

7

evidence was the result of accident, mistake, or ordinary practice. In <u>Micjan v. Wal-Mart Stores, Inc.</u>, No. 114-855, 2016 WL 738052 (W.D. Pa. Feb. 25, 2016), for example, the plaintiffs brought suit on behalf of their infant son after he died of asphyxia while sleeping in his crib. <u>Micjan</u>, 2016 WL 738052, at *1. They sued Wal-Mart, alleging that the cause of the incident was a "defective and dangerous crib bumper." <u>Id</u>. In response to discovery requests, they admitted that several other items had been in the crib with their son, but conceded that those items had not been retained. <u>Id</u>. Many of those items had apparently been lost during a subsequent move, another was destroyed by their dog, and the crib and crib mattress had been donated to Goodwill. <u>Id</u>. at *2. Like in the instant case, the defendants argued that they had been prejudiced in their inability to present alternative explanations for the fatal injury. <u>Id</u>. at 7 ("Defendants argue that, because Plaintiffs' claims are based upon Dylan's death from asphyxiation and because they did not maintain the other items in the crib (which Dylan could have suffocated on), they cannot present a full defense and therefore the claims should be dismissed."). The court rejected defendants' argument that the loss of those items, including those that were intentionally disposed of, amounted to spoliation:

> Defendants have not met the standards necessary to demonstrate that spoliation occurred. The items were in Plaintiffs' control and it is plausible that they would be relevant to Defendants' defense in this case, namely, that Dylan asphyxiated on an object other than the crib bumper pad. But, as noted above, the third factor requires bad faith to show actual suppression and the evidence in this case is that most of the items were lost when Plaintiffs moved from Virginia to Pennsylvania, their dog destroyed one item and they gave the crib and crib mattress to Goodwill. **There is no evidence that their actions were a deliberate attempt to impede a potential defense**.

<u>Id</u>. at *10 (emphasis added). Other courts have routinely reached the same conclusion. <u>See</u>, <u>e.g.</u>, <u>Bozic</u>, 912 F.Supp.2d at 270 (collecting decisions and noting that "[a]lmost all of the district court cases applying <u>Bull</u> . . . have declined to find spoliation where the party's conduct was no

worse than negligent, or where the evidence was lost in the normal course of daily business or other similar activity"); Punch v. Dollar Tree Stores, Inc., No. 12-154, 2017 WL 752396, at *4-5 (disposal of critical evidence did not amount to spoliation in the absence of "a deliberate attempt to impede a potential defense"); Harris v. Jacobs, No. 11-4685, 2012 WL 4109052, at *14-15 (E.D. Pa. Sep. 19, 2012) (negligence); Heck v. Mem'l Health Sys., No. 10-1675, 2012 WL 3597175, at *2-3 (M.D. Pa. Aug. 20, 2012) ("merely . . . misplaced"); Victor v. Lawler, No. 08-1374, 2012 WL 1642603, at *8-10 (M.D. Pa. May 10, 2012) (evidence lost despite unsuccessful efforts to preserve); Dunn v. Mercedes Benz of Ft. Washington, Inc., 10-1662, 2012 WL 424984, at *6 (E.D. Pa. Feb. 10, 2012) (conduct was negligent but not "willful[] or in bad faith").

In the instant case, Goodyear failed to adduce any evidence that the front axle assembly and steer damper were intentionally destroyed or that plaintiff otherwise acted in bad faith with respect to their disappearance. Goodyear accuses plaintiff of reckless or negligent conduct with respect to the manner in which the evidence was preserved. Progressive's agents, however, explicitly ordered that a litigation hold be placed on the entire truck and all related components for the distinct purpose of preserving that evidence for litigation. Although largely inconclusive, the limited evidence that exists suggests that the most likely explanation for the loss of the evidence in question is that the parts were misplaced during a change in storage facilities. Critically, there is no evidence of any sort to suggest that plaintiff or her insurance company had any role in the destruction or disappearance of those components. On this record, Goodyear failed to meet its burden of establishing that the disappearance or destruction of that evidence amounted to anything more than inadvertence or mistake. See, e.g., Bull, 665 F.3d at 79 ("[A] finding of bad faith is pivotal to a spoliation determination"); Brewer, 72 F.3d at 334 ("No unfavorable inference arises when the circumstances indicate that the document or article in

9

question has been lost or accidently destroyed . . ."); Micjan, 2016 WL 738052, at *10 (no spoliation in the absence of "evidence that [plaintiffs'] actions were a deliberate attempt to impede a potential defense").

Goodyear's reliance on First Senior Financial Group LLC v. Watchdog, No. 12-1247, 2014 WL 1327584 (E.D. Pa. Apr. 3, 2014), to demonstrate bad faith by virtue of recklessness or neglect is similarly unavailing. In Watchdog, the allegedly spoliated evidence consisted of a series of computer files stored on the defendant's family computer. Id. at *2. The computer was located in an area that could be accessed by anyone in the household. Id. At some point after it became apparent that the files were relevant to pending litigation, someone accessed the computer and deleted the relevant files. Id. at *8. Although the defendant denied personally or intentionally deleting the files, the court determined that she nonetheless acted "intentionally and in bad faith" by failing to take any steps to ensure that the files would be preserved:

> The Court concludes that Brennan acted intentionally and in bad faith. First, Brennan knew with absolute certainty that the Plaintiffs sought the information on the target computer and that the Court had mandated its submission to a forensic exam. Cf. Bull, 665 F.3d at 77 ("there is not one instance in which we can verify that [plaintiff] knew that [defendant] wanted the original notes.") Thus, Brennan was on notice that preservation of the data on the target computer was of the utmost importance. Second, after identifying computers from which she accessed her websites, Brennan abruptly departed Pennsylvania for Texas. Despite the impending production of the target computer, there is no evidence that Brennan took any measures to safeguard its data in her absence: she did not communicate to Ms. Cantrell the high importance of preservation of the computer in its current form, she did not notify her counsel of her departure, and she took no other measures to ascertain that the computer would be secure or available for examination in her absence. Third, Brennan's lack of communication with her counsel caused him to misrepresent on July 3rd that Brennan could obtain a mirror image using EZ Imager, while in fact Brennan maintains that she was in Texas at the time. Fourth, Brennan resisted examination of the target computer until the Court reiterated, in written form on August 6th and verbally on August 20th, that the computer must be produced. The computer was eventually turned over for forensic examination not by

> Brennan or her counsel, but by Ms. Cantrell's son-in-law David Borda. Meanwhile, Windows 7 was mysteriously reinstalled on the target computer on July 7th and Tracks Eraser Pro and CCleaner were employed at an unascertainable earlier date.

Id.

Goodyear contends that, as in Watchdog, plaintiff's course of conduct with respect to the missing front axle assembly and steer damper "[rose] above mere negligence and inadvertence to effectuating actual suppression of evidence." Id. at *9. In Watchdog, however, the plaintiff took no steps to restrict access to the computer or files at issue, failed to communicate to anyone that the files needed to be preserved, took no measures to secure the computer when she traveled out of the state, failed to communicate with her attorney as to the location and preservation of the computer, and intentionally resisted court orders to submit the computer for examination. Id. at *8. There was no dispute in Watchdog that the pertinent files were intentionally uninstalled and erased by an individual acting with specific intent to resist their discovery; it simply could not be determined whether that person was the defendant or someone else. Id. In contrast, plaintiff and her insurance company took several concrete steps to preserve the evidence at issue in this case prior to its disappearance. As noted above, the truck was delivered to a storage facility immediately following the accident and placed on legal hold. The request to place the evidence on legal hold was made both orally and in writing, and a "hold sticker" was placed on the truck. Shortly thereafter, Goodyear's local counsel visited the salvage yard and photographed the vehicle, including the front axle assembly. Plaintiff's counsel later emailed Clute again to specifically request that the "right front tire and axle" continue to be preserved. This behavior stands in stark contrast to the "reckless" and intentional misconduct committed by the defendant in Watchdog. Id. at *9 (defendant "acted recklessly by departing for Texas without notification or care for compliance" with a court order to preserve evidence and "knowingly and intentionally

. . . resist[ed] production of the target computer for a period of over two months" until the evidence mysteriously went missing).

In the absence of any evidence relating to the actual disappearance of the evidence at issue, Goodyear suggests that plaintiff demonstrated bad faith in the aftermath of that disappearance by waiting over a year before engaging a private investigator to find the missing parts. Goodyear maintains that this delay allowed the trail to "go cold" and prevented Goodyear from undertaking its own search to recover the missing evidence. Goodyear, however, did not cite any caselaw supporting the proposition that a party's conduct *after* the disappearance of relevant evidence entitles the opposing party to sanctions. Moreover, to the extent that plaintiff's efforts to locate the missing evidence could be characterized as less than diligent, such negligence, whether in the preservation of evidence or in the attempt to recover missing evidence, is still insufficient to support a claim for spoliation sanctions. See, e.g., Bozic, 912 F.Supp.2d at 270 ("Almost all of the district court cases applying Bull . . . have declined to find spoliation where the party's conduct was no worse than negligent . . . .").

V. Conclusion

For the foregoing reasons, Goodyear failed to meet its burden of demonstrating that the missing front axle assembly and steer damper were actually withheld or suppressed. Goodyear's motion for sanctions will be denied. An appropriate order will be entered.

    By the court:

    /s/ Joy Flowers Conti
    Joy Flowers Conti
    Chief United States District Judge

Dated: June 23, 2017